UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TONY S.,[1] | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) |
|         v. | )    No. 1:21-cv-2954-SEB-MG |
| | ) |
| KILOLO KIJAKAZI,[2] Acting Commissioner of the Social Security Administration, | ) |
| | ) |
|     *Defendant.* | ) |

## REPORT AND RECOMMENDATION

In February 2019, Plaintiff Tony S. applied for disability insurance benefits ("DIB") under Title II and subsequently filed an application supplemental security income ("SSI") under Title XVI in August 2019, alleging a disability onset date of February 1, 2019 in both applications. [Filing No. 8-6 at 2-3, 8-16.] His applications were initially denied on January 7, 2020, and upon reconsideration on April 20, 2020. [Filing No. 8-3 at 28-29, 56-57.] The Administrative Law Judge Monica LaPolt (the "ALJ") conducted a telephonic hearing on February 22, 2021. [Filing No. 8-2 at 27-63.] The ALJ issued a decision on May 21, 2021, concluding that Tony S. was not entitled to receive benefits. [Filing No. 8-2 at 11-21.] The Appeals Council denied review on October 5, 2021. [Filing No. 8-2 at 2-4.] On December 2, 2021, Tony S. timely filed this civil action asking

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Fed. R. Civ. P. 25(d), after the removal of Andrew M. Saul from her office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when he was named Acting Commissioner.

the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.]

The Court referred this matter to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 73. [Filing No. 10.] For the following reasons, the undersigned **RECOMMENDS** that the Court **REVERSE** the decision of the ALJ denying Tony S. benefits and **REMAND** this matter for further proceedings.

## I.
### STANDARD OF REVIEW

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, __U.S.__, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id*. In reviewing the ALJ's decision, the Court must uphold the ALJ's finding of fact if the findings are supported by substantial evidence. *Stephens*, 888 F.3d at 327. For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless

'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, he will automatically be found disabled. If a claimant satisfies Steps One and Two, but not Three, then he must satisfy Step Four. Once step Four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley,* 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if her decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g., Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Tony S. was 40 years old on the date of his alleged onset of disability. [Filing No. 8-3 at 2.] He has at least a high school education, and previously worked a stocker and custodian. [Filing No. 8-7 at 24.] Tony S.'s application alleges that he can no longer work because of fibromyalgia and five bulging discs in his neck and lower lumbar. [Filing No. 8-7 at 23.][3]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and concluded that Tony S. was not disabled. [Filing No. 8-2 at 21.] Specifically, the ALJ found as follows:

- At Step One, Tony S. has not engaged in substantial gainful activity[4] since February 1, 2019, the alleged onset date. [Filing No. 8-2 at 13.]

- At Step Two, Tony S. "has the following severe impairments: degenerative disc disease of the lumbar spine and fibromyalgia." [Filing No. 8-2 at 14.]

- At Step Three, Tony S. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. As to the "paragraph B" criteria for Listings 12.02 and 12.04, the ALJ found that Tony S. had "mild" limitations in three areas: (1) interacting with others, (2) concentrating, persisting, or maintaining pace ("CPP"), and (3) adapting or managing oneself; and "no" limitations in one area: understanding, remembering, or applying information. [Filing No. 8-2 at 15-16.]

- After Step Three but before Step Four, Tony S. had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. He is also limited to occasional balancing, stooping, kneeling, crouching and crawling." [Filing No. 8-2 at 16.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Tony S.'s RFC, the ALJ determined Tony S. was not capable of performing any past relevant work. [Filing No. 8-2 at 19-20]

- At Step Five, relying on the VE's testimony and considering Tony S.'s age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that the claimant can perform, including price marker (DOT 209.587-034), furniture rental clerk (DOT 295.357-018) and garment sorter (DOT 222.687-014). [Filing No. 8-2 at 20-21.]

## III.
### DISCUSSION

---

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

Tony S. argues that the ALJ erred in the following ways: (1) by failing to consider whether his headaches met or equaled an impairment at Step Two and in the RFC finding; (2) by ignoring his need to use an assistive device for ambulation; and (3) by not complying with SSR 16-3p during the ALJ's subjective symptom analysis. [Filing No. 11 at 4.]

### A. Migraine Headaches and the RFC Finding

Tony S. argues that the ALJ failed to address his recurring headaches in the Step Two analysis and subsequently in the RFC finding. [Filing No. 11 at 19.] He argues that the ALJ did not even mention migraines or headaches, let alone find that they were non-severe, severe, or medically determinable. [Filing No. 11 at 19.]

The Commissioner responds that Tony S. has not explained what other limitations have been established by the record that the ALJ should have included in the capacity finding. [Filing No. 12 at 11.] The Commissioner contends that the "evidence cited in support of limits due to headaches showed Imitrex medication relieved [Tony S.'s] headaches." [Filing No. 12 at 11.] Further, Tony S. stated that in 2019, he worked 80 hours per week despite pain and complaints of headaches, and that none of the medical records cited by Tony S. demonstrate specific limitations the ALJ should have considered. [Filing No. 12 at 11-12.]

Tony S. replies that while he told his doctor he worked 80 hour per week despite pain and complaint of headaches, his pay history makes clear that he was only worked nine hours one week and was not maintaining an 80-hour work week. [Filing No. 14 at 2.] Further, Tony S. argues that the ALJ did not acknowledge headaches at all is the initial error before addressing errors associated with lack of limitations. [Filing No. 14 at 2.] Tony S. contends there is no indication the ALJ considered all relevant evidence because she did not analyze the combined effects of all his impairments, including the evidence of his migraines. [Filing No. 14 at 2.] He argues that the

possibility of missing five or six days of work due to migraines is not irrelevant or unimportant and because there was not a minimal level of articulation, there is reversable error.

At step two, the ALJ must determine whether a claimant has any medically determinable impairments based on objective medical evidence. 42 U.S.C. §423 (d)(1)(A). Because Tony S.'s arguments focus on the ALJ's analysis (or alleged lack thereof) of limitations posed by his migraine headaches, the Court begins with a summary of the evidence on that front.

On July 6, 2020, Tony S. presented to Guion Family Practice with Kyndra Mercer, NP who indicated active problems with migraines. [Filing No. 8-14 at 5.] From March 2, 2020 through January 5, 2021, Tony S. presented to Center for Pain Management with Barb Kovacs, NP. NP Kovacs noted several instances of migraine headaches, including on: (1) March 30, 2020, noting neck pain causing headaches; (2) May 26, 2020, noting neck pain unchanged and continues causing headaches, and Imitrex ordered for headaches; (3) June 23, 2020, noting neck pain increased and continued headaches; (4) July 21, 2020, noting continued neck pain and headaches; (5) August 18, 2020, noting neck pain unchanged but headaches are stable on current medication; (6) September 15, 2020, noting continued neck pain and headaches; (7) November 10, 2020, noting continued neck pain and headaches, but Imitrex relieves headaches and is taking all nine tablets a month; (8) December 8, 2020, noting five headaches in the last month; (9) January 5, 2021, noting six migraines in that month and that they were controlled with medication. [Filing No. 8-20 at 3-43.] On February 4, 2021, Jeffrey Hilburn, M.D. noted Tony S. had past medical history including migraine headaches. [Filing No. 8-21 at 55.] It does not appear that Tony S. provided any evidence of aggravating factors.

An RFC represents "the maximum a person can do—despite his limitations—on a regular and continuing basis, which means roughly eight hours a day for five days a week." *Pepper v.*

*Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (internal quotation marks omitted). In determining an individual's RFC, "the ALJ *must* evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano*, 556 F.3d at 563 (emphasis added). An ALJ must provide more than a "cursory analysis" for rejecting limitations alleged by a claimant. *Id.* That is so because the ALJ must build an "accurate and logical bridge" between the evidence and the result. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). A court must uphold an ALJ's RFC determination "if the evidence supports the decision and the ALJ explains his analysis of the evidence with enough detail and clarity to permit a meaningful review." *Arnett v. Astrue*, 676 F.3d 586, 591-92 (7th Cir. 2012).

In the RFC assessment, the ALJ's RFC finding did not include an assessment of migraine headaches, or any limitations posed by absences or time off task due to associated symptoms. [Filing No. 8-2 at 17-19.] The ALJ found that Tony S.'s statements about the limiting effects of his impairments were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Filing No. 8-2 at 17.] The ALJ stated she found Tony S.'s statements inconsistent because he showed normal findings on objective medical imaging and diagnostics, and frequently showed normal findings on examinations. [Filing No. 8-2 at 17-18.]

Moving to the VE's assessment, the VE testified that being off task 10% or more of the workday, missing more than one day per month, and needing to take breaks of ten minutes or more per hour would preclude competitive employment. [Filing No. 8-2 at 58-59.] Further, if an individual needs two to three additional breaks of 10 to 15 minutes at a time, or if an individual needs to lay down for 30 minutes for two to three times weekly upon increase in symptoms, the VE opined that this would be work preclusive. [Filing No. 8-2 at 59-60.] Lastly, the VE opined

8

that if an individual is unable to work at a production rate necessary to meet end-of-day quotas because their symptoms require a slower pace than average, this would similarly be work-preclusive. [Filing No. 8-2 at 62.]

      The Court finds the RFC analysis troublesome because, although the record contains complaints about Tony S.'s headaches, the undersigned is unable to discern from the ALJ's decision whether the ALJ considered the evidence regarding limitations of absence and time off task posed by Tony S.'s headaches. *See Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) ("[A]lthough the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected.") (quoting *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

      Even if the ALJ reasonably rejected Plaintiff's reports, the ALJ was required to determine the frequency, duration, and limiting effects of migraines/headaches. *Indoranto*, 374 F.3d at 474 (remanded where ALJ failed to discuss how claimant's headaches affected her ability to work); *Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014) (ALJ required to reach certain conclusion regarding the severity of claimant's migraines); *Moon v. Colvin*, 763 F.3d 718, 719 (7th Cir. 2014) (ALJ improperly analyzed headaches and failed to accommodate for them in the RFC assessment).

      Here, the ALJ failed to sufficiently address and confront evidence of Tony S.'s headaches in formulating the RFC. Even if Tony S. had headaches less frequently than reported and lasted for shorter periods of time, if they incapacitated him during the work hours and limitations outlined by the VE, that may have a significant impact on his ability to sustain full-time, competitive work, and the ALJ should have listed an accommodation. *Farrell*, 692 F.3d at 773. Thus, the undersigned

9

finds that the ALJ failed to build a logical bridge between the articulated evidence and the RFC finding.

The undersigned **RECOMMENDS** the Court **REMAND** this case for further proceedings so that the ALJ can fully consider time off task and absenteeism limitations posed by the evidence of Tony S.'s migraine headaches, and so the ALJ can fully articulate findings regarding the same.

**B.    Need for Ambulation Device**

Tony S. next argues that the ALJ failed to make any determination regarding his use of a cane or walker for ambulation and balance. [Filing No. 11 at 21.] He argues that the only mention of an assistive device was when the ALJ noted that he uses a cane to ambulate. [Filing No. 11 at 21 (citing Filing No. 8-2 at 17).] Tony S. argues that the ALJ's failure to do more requires remand.

The Commissioner argues that the ALJ appropriately acknowledged Tony S.'s allegations that he needed a cane or walker to ambulate but cited further evidence that showed he demonstrated a normal gait and instances of no ambulatory aids. [Filing No. 12 at 12.] The Commissioner contends that the ALJ also considered Tony S.'s walking abilities from September 2020 records which note that he walked three miles on a regular basis. [Filing No. 12 at 12.]

Tony S. argues that the record shows he continued to fall even when wearing bilateral knee braces and was unable to use his cane because of balance problems. [Filing No. 11 at 21-22.] He states that he requested a walker, and one was ordered by NP Kovacs. [Filing No. 11 at 22.]  He contends that the ALJ cherry-picked the evidence, only citing to the records where his gait was normal, or he did not use a cane or walker. [Filing No. 14 at 3.]

SSR 96-9p 1996 WL 374185, at *7, explains that an "adjudicator must always consider the particular facts of a case" concerning the use of hand-held assistive devices. The ruling explains:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or

10

standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

*Id.* Depending on the circumstances, the SSA's guidance suggests that consultation with a vocational resource "may be especially useful" to consider the effect of the use of an assistive device on the occupational base. *Id.* In *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012), the court explained that even abundant evidence of the claimant's use of an assistive device—including her presentation with one during treatment visits—did not necessarily establish that an assistive device was medically required according to SSR 96-9p.

Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight*, 55 F.3d at 314 (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and his conclusions," *O'Connor-Spinner*, 627 F.3d at 618. The ALJ failed to build that logical bridge in this case.

Here, the ALJ determined in Tony S.'s RFC that he could perform light work, except that he is limited to occasional balancing, stooping, kneeling, crouching, and crawling. [Filing No. 8-2 at 16.] The ALJ provided no limitations regarding the amount of time Tony S. could sit or stand during an eight-hour workday. Although the ALJ did not say so explicitly, the decision necessarily includes an implicit finding that Tony S. was not restricted to the use of a hand-held assistive device; although the ALJ noted that Tony S. testified he utilizes a can or walker when ambulating, the ALJ never acknowledged that Tony S. *needed* them.

It is true that the ALJ made some reference in the RFC analysis regarding Tony S.'s ability to ambulate. The ALJ observed from Tony S.'s subjective reports that "[Tony S.] falls 4-5 times per week, as he loses control of his legs. When ambulating, he utilizes a cane or walker. He can

11

stand for 15-25 minutes at a time, walk 30-40 feet, sit for 10-20 minutes, and lift/carry a gallon of milk. He also lies down every day for at least an hour due to pain." [Filing No. 8-2 at 17.] At his February 2021 hearing, Tony S. testified that he began using a walker in 2020 and that he began using a cane in 2019. [Filing No. 8-2 at 41-42.] Counsel asked Tony S. whether the walker was prescribed by any healthcare provider, to which he responded in the affirmative, naming NP Kovacs—which was ordered on June 23, 2020. [Filing No. 8-20 at 27.] Tony S. testified that his doctor thought he needed to use a walker instead of a cane "[d]ue to falling so much, and I just had surgery on knee --- my knee." [Filing No. 8-2 at 42-43.] On examination, Tony S.'s straight leg raising was negative bilaterally, his strength, sensation, and motor functioning was intact in lower extremities, and he exhibited a steady gait with normal posture. [Filing No. 8-2 at 18; Filing No.

"A finding of necessity must rest on 'medical documentation establishing the need for a hand-held assistive device to aid in walking and standing, and describing the circumstances for which it is needed.'" *Trip*, 489 Fed. Appx. at 955 (citing SSR 96-9p). The ALJ never suggested that she thought Tony S.'s cane or walker were *medically* necessary. The record refers to Tony S.'s use of a cane and walker, but these mentions are traceable to his self-reports and to physicians' observations that he presented with an assistive device. The fact that Tony S. was prescribed assistive devices by his medical provider does not establish that his medical sources determined that he would need to use them in the workplace. NP Kovacs' statement that she "did order a walker for him" lacks the specificity necessary to determine whether this was a medical necessity and where such use is needed. [Filing No. 8-20 at 27.] The prescription does not establish the specific circumstances that an assistive device might be medically required according to SSR 96-9p. In the undersigned's view, the record supports the ALJ's finding.

12

The undersigned **RECOMMENDS** this Court **AFFIRM** the ALJ's findings on this issue. Of course, because the undersigned has recommended remand on other issues, the ALJ is free to re-evaluate this issue upon remand.

**C.     SSR 16-3P Analysis**

Lastly, Tony S. contends the ALJ failed to comply with SSR 16-3p during the ALJ's subjective symptom analysis, namely that the ALJ merely cited a handful of medical records and noted Tony S.'s receipt of unemployment compensation during the relevant period, which required he was willing and able to engage in work activity. [Filing No. 11 at 26.] Tony S. argues that the ALJ's decision lacks necessary articulation and failed to seek an explanation as to why he sought unemployment benefits, and this was the ALJ's only consideration of the reliability and consistency of his statements regarding his limitations. [Filing No. 11 at 26.] Further, he argues that attempting to work after the onset of disability does not mean that person is not disabled.

The Commissioner contends that the ALJ did not solely consider unemployment compensation and medical evidence when assessing Tony S.'s subjective complaints. [Filing No. 12 at 17.] The Commissioner argues that the ALJ considered regulatory factors explaining the symptom evaluation findings and addressed symptoms that Tony S. did not challenge in his appeal. [Filing No. 12 at 17.] The Commissioner contends that the ALJ considered a variety of valid factors when assessing Tony S.'s symptoms and therefore, her symptom evaluation should not be overturned.

An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shidler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, the ALJ must provide specific reasons supporting his or her evaluation that are supported by the record. *Pepper* 712 F.3d at 367.

SSR 16-3p addresses the method by which ALJs should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, *available at* 2017 WL 5180304, at *1. SSR 16-3p eliminates "the use of the term 'credibility'" from the evaluation process and clarifies that "subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." *Id.* at *1. SSR 16-3p instructs ALJs to use the following method to evaluate statements regarding the intensity, persistence, and limiting effects of symptoms:

> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult.

*Id.* at *2. Thus, ALJs use a two-step evaluation of an individual's subjective symptoms. First, an ALJ must determine whether a claimant has "an underlying medically determinable physical or mental impairment that could reasonably be expected to produce an individual's symptoms." *Id.* at *3.

If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves the second step in which the ALJ must consider all evidence in the record to evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. To conduct this analysis at the second step, SSR 16-3p instructs as follows:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; and individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

*Id.* at *4. When assessing credibility of a claimant's symptom testimony, the ALJ also considers the factors set forth in 20 C.F.R. § 416.929(c)(3), *i.e.*, (1) a claimant's daily activities, (2) the location, duration, frequency of the pain or other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication, (5) treatment received for relief of pain or other symptoms, (6) measures the claimant uses to relieve pain or other symptoms, and (7) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *Id.*

Ultimately, the ALJ must explain the subjective symptom analysis "in such a way that allows [a court] to determine whether [the ALJ] reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (internal quotations omitted). And, "[n]ot all of the ALJ's reasons must be valid," to uphold a subjective symptom finding, "as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009). Here, the ALJ's subjective symptom analysis was flawed in multiple respects.

The ALJ began by stating that Tony S.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms." [Filing No. 8-2 at 17.] The ALJ then noted, Tony S.'s "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Filing No. 8-2 at 17.] Beyond this statement, the ALJ provided the following specific reason to support her finding at step two:

> Besides the medical evidence, another factor indicated that the claimant was not as limited as alleged. The record reflected that he received unemployment compensation during the relevant period at issue (5D). This required the claimant to certify he was willing and able to engage in work activity, which is inconsistent with a claim for disability.

[Filing No. 8-2 at 18.]

15

An ALJ may consider a claimant's application for unemployment compensation as a factor when assessing subjective complaints. *Dowlen v. Colvin,* 658 F. App'x 807, 812 (7th Cir. 2016) (citations omitted) ("Although a claimant can still be found disabled while collecting unemployment benefits or looking for work, an ALJ may take this factor into account in assessing the subjective complaints of disability."). However, the Seventh Circuit has explained that "a claimant's desire to work is not evidence that the claimant has embellished his limitations," and the collection of unemployment is not necessarily inconsistent with disability because a claimant may be hoping that ongoing medical treatment will restore her capacity to earn gainful employment. *Lambert v. Berryhill*, 896 F.3d 768, 778 (7th Cir. 2018). This is so because "[t]here is no inherent inconsistency in being both employed and disabled." *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016) (citing *Wilder v. Chater*, 64 F.3d 335, 337-38 (7th Cir. 1995)). *See also Cullinan v. Berryhill*, 878 F.3d 598, 604 (7th Cir. 2017) ("A positive work history makes a claimant *more* credible, and a desire to resume work similarly makes a claimant more credible, not less.") (internal citation omitted) (emphasis original). The *Lambert* court further explained:

> Finally, we note a more fundamental problem with the ALJ's reliance on [the claimant's] application for unemployment compensation to discount his credibility in seeking disability benefits. Under the Social Security Act, the line between disabled and nondisabled can be very difficult to chart accurately. And the Social Security system is designed to encourage everyone who can work to do so. [. . .] And a person who is not certain whether he will qualify for Social Security disability surely has, *and should have*, a strong incentive to keep looking for work and to pursue unemployment compensation as an interim source of income. An ALJ should not discount a claimant's credibility based on an application for unemployment compensation without taking these incentives and pressures into account.

*Lambert*, 896 F.3d at 778-79 (emphasis in original). Similarly, in *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014), the court explained that "a claimant's dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her . . . symptoms." *See also*

*Gerstner v. Berryhill*, 879 F.3d 257, 265 (7th Cir. 2018) ("[T]he job search, on its own, is no evidence that [claimant] embellished her pain because a claimant who looks for work after claiming a painful disability may have a strong work ethic or overly-optimistic outlook rather than an exaggerated condition.") (internal quotation marks omitted).

Tony S. argues that he was not working at the time he applied for unemployment, but that he merely said he would be willing to. [Filing No. 11 at 27.] While the Commissioner is correct that the ALJ did in fact evaluate medical evidence in addition to unemployment benefits, the ALJ's evaluation of the issue is patently wrong. *See Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (Only when an ALJ's decision "lacks any explanation or support . . . will [a court] declare it to be 'patently wrong.'").

Here, the ALJ did not explicitly consider the facts of Tony S.'s case concerning his work attempts and any collection of unemployment benefits. In fact, the ALJ noted that this activity is "inconsistent with a claim for disability". [Filing No. 8-2 at 18.] The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore*, 743 F.3d at 1123 (citations omitted). "The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Id.* As the undersigned has noted above, without consideration of the facts of the case surrounding unemployment benefits, collection of employment compensation is not necessarily inconsistent with disability.

Questions remain on remand as to how the ALJ analyzed (or would analyze) relevant evidence regarding unemployment benefits that were not expressly considered in the subjective analysis. The Court's role on review is not to act as a fact finder, and the Court cannot make

17

credibility determinations. Accordingly, the undersigned **RECOMMENDS** the Court **REVERSE and REMAND** for further consideration of Tony S.'s statements concerning his subjective symptoms.

## IV.
### CONCLUSION

For the reasons detailed above, the undersigned **RECOMMENDS** the Court **REVERSE** the ALJ's decision denying Tony S. benefits and **REMAND** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Failure to file timely objections within fourteen (14) days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 2/22/2023

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**